# FRANCIS H. EDELIN *vs.* EDWARD J. SANDERS, EXC'R OF WILLIAM SANDERS.

The general plea of *non est factum* imposes on the plaintiff the *onus* of proving both the execution and *delivery* of the bond.

Proof of execution and possession is *prima facie* evidence of delivery, and in the absence of all proof on the other side will entitle the obligee to a verdict.

The *seal* imports a consideration and the latter *as such* cannot be inquired into under the plea of *non est factum,* but the obligee may give in evidence anything which goes to show the bond was originally void at common law, as lunacy, fraud, coverture; or that it has become void subsequent to execution and before suit, as by *erasure, alteration,* &c.

When there is nothing *in the record to show it* this court cannot *assume* that a bond was erased or altered after delivery, and can have no *judicial knowledge* of the fact if it existed.

If upon inspection the bond appeared to have been altered the fact should be noticed in the exception either by agreement or by asking the opinion of an *expert* in handwriting his opinion as to its appearance.

Where there is proof that a bond has been *altered* facts tending to show *fraud* on the part of the obligee, by showing his relations and dealings with the obligor, are admissible under the plea of *non est factum.*

The *will* of a testator is not admissible in evidence for the executor in an action against such executor, because to allow it to be given in evidence would be to permit a party to testify in his own case and in his own behalf.

Where there is no evidence on which the hypothesis of a prayer could be based it must be rejected.

The name of the obligee is a *material* part of a bond, and as a general principle delivery in *blank* is an insufficient delivery, unless recognized after the blank is filled up.

Edelin *vs.* Sanders, Exc'r of Sanders.

Where a prayer on the part of the plaintiff requires the jury to find all that is essential to the plaintiff's right to recover the addition of mere *surplusage* will not vitiate it.

APPEAL from the Superior Court of Baltimore city.

*Debt,* brought by the appellant, on the 30th of October 1849, upon an alleged bond of the appellee's testator in favor of the plaintiff for $2000, dated the 11th of December 1838 and payable on or before the 1st of July 1840, without interest until that time. The defendant, as executor, under leave of the court, pleaded *non est factum* without oath, upon which issue was joined.

*1st Exception.* The plaintiff gave in evidence the bond sued on, (which appears in the record as perfect on its face, without any appearance of *erasure,)* and his possession thereof at the bringing of this suit; and then proved by William B. Stone and other witnesses the facts stated in the opinion of this court, and also that there was a controversy between defendant's testator and the plaintiff about the negroes referred to, as the plaintiff claimed them to be in the same secret trust, which trust the testator always denied; that a proposition was made by some of the parties, that a bond should be executed by the testator and left in the hands of a third party, as an *escrow,* as security that the testator would not sell the negroes or dispose of them; but this proposition failed, and witness does not know whether any paper was prepared to carry out such proposition. Also, that said testator was the brother of said Rebecca Boarman and uncle to the plaintiff's wife, and that both the bond to the plaintiff and that to Rebecca Boarman correspond with the time, as regards their payment, when the purchaser of said real estate was to begin to pay interest to the testator. Also, that the testator suffered the plaintiff and Mrs. Rebecca Boarman to remain in possession and use of the negroes mentioned up to the time he replevied them from the plaintiff. The defendant then offered in evidence a record of a *replevin suit,* in Charles county court, by the defendant's testator against the plaintiff, for certain negroes therein specified, begun on the 13th of January 1844, and setting out the recovery of said negroes by the plaintiff in that suit; and also,

a record of an action of *debt* in Charles county court by the defendant in this case, as executor of William Sanders, against the plaintiff, begun on the 30th of May 1850, upon a sealed note of the plaintiff in favor of said William Sanders for $500, dated the 3rd of April 1840, and payable on demand, upon which judgment was rendered in favor of the plaintiff in that case for the full amount of the note.   To the admissibility of each of these records as evidence in this case, the plaintiff excepted, but the court, (FRICK, J.,) overruled this objection and permitted the records to go to the jury as evidence.   To this ruling the plaintiff excepted.

*2nd Exception.* In addition to the testimony in the first exception the defendant proved, that a short time after the death of Sanders witness had a conversation with the plaintiff, in which he spoke of his note to Sanders for $500, saying he did not intend to pay it as it was not Sander's money, but was a portion of the money for the sale of land which his (plaintiff's) wife was entitled to, but he said nothing to witness about the bond in suit.   The plaintiff then offered proof of his general character for integrity.   The defendant then offered to read the will of William Sanders, his testator, in which he devises to the plaintiff's wife and Rebecca Boarman the negroes recovered by him in the replevin suit mentioned in the first exception.   To the admissibility of this will the plaintiff objected, which objection the court overruled, and admitted the will in evidence.   To this ruling the plaintiff excepted.

*3rd Exception.* The plaintiff then offered the following prayers:

1st. It is not competent for the defendant in this case to impeach or question the consideration of the note sued on, and the only matter for the jury to consider under the pleadings is, whether the defendant's testator executed and delivered the note as claimed by the plaintiff, and if the jury find such execution and delivery the plaintiff is entitled to recover, unless the jury further find, that said note has been altered by the plaintiff or by his procurement in some material particular after such execution and delivery.

2nd. If the jury shall believe from the evidence, that the

single bill in suit was made by William Sanders, the defendant's testator, payable in blank, and was so delivered to the plaintiff, then the plaintiff is entitled to recover in this action.

3rd. If the jury believe from the evidence, that the single bill in suit was executed by the defendant's testator, payable to some other obligee than the plaintiff, and the name of such obligee was subsequently erased and the name of the plaintiff was substituted as payee with the knowledge of the defendant's testator, the plaintiff is entitled to recover in this case.

4th. If the jury believe that the note in suit was delivered to the plaintiff by the defendant's testator, and that the name of the payee was left blank at the time of such delivery, but the same was intended by said testator to be filled up with the name of the plaintiff and for his benefit, then no alteration or erasure in the name of the payee would vitiate it, even if the same was made by the plaintiff, provided the jury believe that as altered it contains the name of the plaintiff as payee.

5th. That the possession of the single bill in suit by the plaintiff is *prima facie* evidence of the sealing and delivery of the same by the obligor to the plaintiff, provided the jury find that the said single bill is subscribed with the signature of the defendant's testator in his own proper handwriting.

6th. If the jury find from the evidence, the execution and delivery of the single bill in suit by the defendant's testator as and for the obligation of the testator, then the plaintiff is entitled to recover, notwithstanding the other facts offered in evidence by the defendant.

The defendant then asked the following prayer:

If the jury shall find from the evidence, that the single bill, upon which suit is brought, was drawn by William B. Stone, the witness, payable to some other person than the plaintiff, and was executed and delivered, (if the jury shall find the same was ever delivered,) in that form by William Sanders, the obligor; or that the same, when so executed and delivered, was in blank, and shall find in the one case the same was afterwards altered by the insertion of a new payee, or in the other filled up with the name of the plaintiff, that then the plaintiff is not entitled to recover, unless the jury shall further

find from the evidence, the subsequent adoption or recognition of said single bill by Sanders, the obligor.

The court rejected the defendant's prayer, and also the *first, second* and *sixth* prayers of the plaintiff, and granted the plaintiff's *third* and *fourth* prayers. The plaintiff's *fifth* prayer the court refused as it was offered, but granted and accepted it with this further explanation, that if the jury shall find that the said note was in blank as regards the payee when it came to the possession of the plaintiff, and that it was afterwards filled up, or altered, or erased in regard to the name of the payee after being filled up, without its being so intended by the obligor at the time, or afterwards adopted or assented to by him, that then the said *prima facie* evidence is rebutted and the defendant is not bound by such delivery.

Both parties excepted to each of these several rulings which was against him, and the verdict and judgment being in favor of the defendant the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Vivian Brent* and *R. T. Merrick* for the appellant, argued:

1st. That records from Charles county court, in the first exception, were not admissible in evidence. There was no attempt to prove a connection between the bond in suit and the particular slaves for which the replevin suit was instituted; and if the bond was given for the slaves which were subsequently recovered as against the bond and the contract out of which it grew, yet to admit the judgment of another court upon the validity of that contract and bond, virtually declaring both fraudulent and invalid, to go to the jury, is to allow the adjudication of that other court to determine the particular matter litigated in the court before which the parties are and to whose judgment they are entitled, independent of the judgment of any other tribunal. If the bond was given for the slaves in dispute in the replevin suit, and these slaves were returned by the party's own will or under the judgment of the court, and by virtue of such return paid and liquidated the bond or any

part of it, that return cannot be given in evidence in this case. 9 *G. & J.*, 361, *Key vs. Knott & Wife.* The consideration of a bond cannot be inquired into except on the ground of *fraud*, and then only when the fraud alleged is in the consideration. 1 *Chitty's Pl.*, 483, 484, *(a.)* Again, there is no proof to show that the negroes recovered in the replevin suit were the same as those conveyed by the bill of sale spoken of by the witnesses. We therefore say, that the record in that suit was *irrelevant* to this case and inadmissible. The second record is of a suit for a *debt* in Charles county court, instituted *since* the present suit in Baltimore county court, and no connection is pretended between the two. The fact that the defendant recovered a judgment against the plaintiff in another court, cannot be admitted to show that the plaintiff has no claim on the defendant. It can establish nothing further than that such a judgment was rendered and is entirely irrelevant to the issues joined in this action. If one debt could be *set off* against the other, it was the defendant's duty to plead the *set-off*, because the present suit was instituted *prior* to the suit in Charles county.

2nd. That the will of the testator, admitted in evidence in the second exception, is not competent evidence for his executor in an action against that executor. The will is but the *declarations* of the *party himself* as to his title and possession of the negroes, which are clearly *inadmissible*. There is no conceivable ground upon which it could be admitted, unless it should have been supposed that *will* was necessarily a *dying declaration*. If the testator were living, he would be the defendant in this action and certainly would not be a competent witness in his own case, and yet justice would be more surely answered by allowing him, in that event, to testify in his own behalf, for the plaintiff would then have the benefit of a *cross-examination* and the security given by the *sanction of an oath*, both of which he is now denied but to which he is entitled, and both of which are tests of truth designed to *exclude all evidence not warranted by them.* 1 *Starkie on Ev.*, 14. This evidence was admitted to go to the jury under the judicial sanction of the court below, and this court cannot say it did the plaintiff

*no harm,* for they cannot determine what weight or influence it had with the jury.

3rd. As to the prayers contained in the third exception: We say:—1st. That in an action on a single bill of which the plaintiff is in possession, proof of the defendant's signature is *prima facie* evidence of its *due execution and delivery,* though the validity of the instrument is disputed by a general *non est factum.* The seal imports consideration, and possession is *prima facie* evidence of *delivery.* 9 *G. & J.,* 361, *Key vs. Knott & Wife.* 1 *H. & J.,* 323, *Clarke vs. Ray.* 4 *H. & J.,* 241, *Miller vs. Honey.* 8 *G. & J.,* 511, *Pannell vs. Williams.* 6 *Pet.,* 137, *Sicard, et al., vs. Davis.* 1 *H. & G.,* 419, *Union Bank vs. Ridgely.* But it is said there is an *erasure* or an *alteration* of this bond, which throws the *onus* of proof upon the plaintiff to show that it was properly made; that the bond has *suspicious marks about it.* But where is this *erasure,* this *alteration,* these *suspicious marks?* There is no such proof in *the record,* nothing to bring them to the notice of this court, if they exist. The *materiality* of an *alteration* is a question for the court, and conceding there was an alteration, there is no proof that it was in a *material matter.* But even if there is an alteration, the *burthen* is not on us to show that it was *properly made,* but upon the party seeking to avoid the *sealed* instrument to show that it was improperly made. An interlineation in a deed, without any thing against it, will be presumed to have been done *before delivery.* 1 *Kebble,* 22, *Trowel vs. Castle.* *Fitzgibbons,* 214, *Fitzgerald vs. Fauconberge.* 2 *Starkie on Ev.,* note 377. 16 *Sergt. & Rawle,* 44, *Heffelfinger vs. Shutz.* 5 *H. & J.,* 41, *Wickes vs. Caulk.* The basis of this presumption is, that the law always presumes in favor of *innocence,* for an alteration of a bond is a *criminal offence,* rendering the party liable to indictment. And if it appears that certain blanks in the bond have been filled up in a handwriting other than that in which the bond is written and other than that of the obligor, such blanks will be presumed to have been filled up before delivery or with the consent of the obligor since delivery, in the absence of proof to show the fraudulent intent of the plaintiff. 6 *G. &*

*J.*, 255, *Byers vs. McClanahan.* 1 *Maine Rep.*, 338, *Hale vs. Russ.* 13 *Do.*, 386, *Gooch vs. Bryant.* 12 *Viner's Abr.*, 58. 9 *Cranch*, 36, *Speake vs. United States.* 3 *Gill*, 337, *Fiery vs. Miller.* But under any theory of this case, the plaintiff was entitled to his *sixth prayer.* There were no facts offered by the defendant to rebut the *prima facie* case of the plaintiff; and whatever facts may have been offered, they could not justify the rejection of this prayer, which simply asks, that the plaintiff may recover if the jury shall believe that the single bill in dispute *was delivered by the obligor to the obligee as and for the obligation of such obligor.* This necessarily implies a delivery in its present shape and as it is offered in evidence, and the plaintiff had a right to have this question submitted in a clear and unembarrassed shape to the jury.

*T. Parkin Scott* and *Wm. Schley* for the appellee, argued:

1st. That issue having been joined upon the plea of *non est factum,* and *delivery* being essential to constitute the writing sued on the bond of the defendant's testator, if the plaintiff relies on the presumption of delivery from the fact of possession, then to rebut that presumption the defendant may offer in evidence any facts or circumstances from which a rational well constructed mind can infer that the writing was not delivered by the testator as his bond. 7 *G. & J.*, 29, 42, *Cole vs. Hebb.* 1 *Md. Rep.*, 11, 15, *Milburn vs. The State.* *Ibid.*, 474, *Waters vs. Dashiell.*

2nd. That though want of consideration is no defence to an action of debt on a bond under any form of pleading which admits the writing sued on to be the defendant's bond, yet under the plea of *non est factum* the want of consideration is a circumstance admissible in evidence to rebut the presumption of delivery from *mere* possession, and more especially where the plaintiff attempted and failed to prove any consideration, either valid or valuable, to induce the belief that defendant in fact executed and delivered the writing as his bond to the plaintiff. 1 *H. & G.*, 416, 418, 419, *Union Bank vs. Ridgely.* 5 *G. & J.*, 303, 304, *Davis vs. Calvert.* 9 *Cranch*, 37, *Speake,*

*et al., vs. The United States.* Under this plea the question is not upon the *dry execution,* but upon the *valid execution* of the deed.

3rd. That in the absence of positive proof of delivery of the writing as his bond, any facts tending to show that there was no probable cause or good reason for its delivery are admissible, under the plea of *non est factum,* to rebut the presumption of delivery from mere possession. This suit was not brought until the bond was more than *nine years* due, and not until *after* the death of the alleged *obligor.* Whether the record in the replevin suit was admissible depends not only on the issue, but upon the preliminary proof of *Stone* and the other witnesses. Stone speaks of a bill of sale and of the proposition to give a note to be deposited as an *escrow,* as security that the testator would not *sell the negroes.* Now it was important for the defendant to *disprove* the *secret trust* as to the negroes, to rebut the inference attempted to be set up of *such trust* as a consideration for the bond. To do this the record in the replevin suit shows that Sanders asserted his *title* to the negroes and maintained it. Again, the *plaintiff himself* went into proof of the consideration of the bond. Any fact therefore *rebutting* this proof on the part of the plaintiff was admissible. If any attempt was made to use the record for an improper purpose, the court would have restrained it upon a prayer framed for that object. As to the *other record,* it shows that Edelin was *indebted* to *Sanders* and that he might have *set off* this bond against that action. This *non action* on the part of the plaintiff in not thus setting off this bond in bar of that suit in his own county where the suit was instituted, is a *circumstance* which is entitled to *weight.* We say therefore that these records tend to show a want of probable cause, or any good consideration or reason for the delivery of the writing sued on as the bond of the testator; that they are circumstances from which the presumption of *fraud* may arise, and were admissible also as *rebutting* evidence. 13 *Pick.,* 75, *Powers vs. Russell.* 6 *Md. Rep.,* 295, *Townshend vs. Townshend.* 7 *Do.,* 601, 608, *Pegg vs. Warford.*

4th. The question presented by the second exception as to

the admissibility of the will of the testator is one of some difficulty. The question however is, whether the *will* was *admissible for any purpose.* It shows that the testator disposed of the negroes in a manner *inconsistent* with the idea of a *secret trust,* and that no one contested this *disposition.* Again, it was admissible to explain the theory of the *escrow.* But we say this exception is disposed of by the point that the will, if inadmissible, *did no harm to the plaintiff,* and the judgment therefore will not be reversed for the error of admitting it. The plaintiff had the full benefit of all the evidence in the case from his *third* and *fourth* prayers which were *granted* by the court. The admission of irrelevant testimony will not authorise a reversal, unless it appears it did or might have done the appellant harm. · 1 *Gill,* 60, *Mulliken vs. Boyce.* 9 *Gill,* 1, *Dakin vs. Pomeroy.* *Ibid.,* 56, *Ramsay vs. Glass.* *Ibid.,* 120, *Anderson vs. Garrett.* *Ibid.,* 156, *Clements vs. Smith.* 12 *G. & J.,* 484, *Doyle vs. The Commissioners of Balto. County.* 5 *Do.,* 159, *Md. & Phenix Ins. Co. vs. Bathurst.*

5th. As to the several prayers embraced in the third exception: The *first* prayer of the plaintiff is *defective* for various reasons. You may question the consideration of the bond. If there was a *total failure* of consideration *mingled with fraud,* it may be given in evidence under the plea of *non est factum.* Any fact which shows that the deed is *not the deed of the party* is admissible as a circumstance to go to the jury. Again, the prayer says the only question for the jury is to consider whether the testator executed and delivered the note " *as claimed by the plaintiff.*" What does this mean? Does it mean as alleged in *pleading* or as *proven in evidence?* In this particular the prayer is uncertain and calculated to mislead the jury. Again, the bond was *altered* and *erased,* and it bore evidence of this on *its face.* The prayers of the plaintiff himself all *concede* this fact, and this court therefore must treat it as appearing on the record. This *erasure* and *alteration* was a *suspicious circumstance,* which throws the *burthen of accounting for it* on the *plaintiff.* *Buller's N. P.,* 267. 2 *Croke,* 626, *Markham vs. Gonaston.* 14 *East,* 568, *Weeks vs. Maillardet.* 11 *Coke's*

*Rep.*, 27, *Pigot's case.* The prayer requires the alteration to be made by the *plaintiff*, whereas the cases just cited show that if it be made by a *stranger* and is *material*, it equally avoids the deed. In this particular also the prayer is defective. Where there is an alteration apparent on the face of the note, the *onus* is thrown on the plaintiff to show that it was made with *consent of the parties*, and that it was not *improperly made.* 25 *Eng. C. L. Rep.*, 395, *Taylor vs. Mosely.* 5 *Bing.*, 183, *Henman vs. Dickinson.* 1 *How.*, 111, *United States vs. Linn, et al.* 1 *Metcalf*, 224, *Davis vs. Jenney.* 9 *Cranch*, 28, *Speake, et al., vs. The United States.* 1 *Pet.*, 561, *Steele vs. Spencer.* 2 *Brock.*, 64, *United States vs. Nelson & Myers.* 6 *G. & J.*, 254, *Byers vs. McClanahan.* The *second prayer* excludes all other questions from the jury except the *delivery in blank*, and asserts that such delivery is *good*, but this proposition is contrary to the whole current of decisions. This and all the other prayers on the part of the plaintiff, rejected by the court below, utterly *ignore* the fact of alteration and erasure apparent on the face of the bond, and for this reason were properly rejected.

Le Grand, C. J., delivered the opinion of this court.

This was an action of *debt*, brought by the appellant, in Baltimore county court, against the appellee, as executor, upon an alleged bond of his testator for $2000, dated the 11th of December 1838, and payable on or before the 1st of July 1840. The suit was not brought until more than nine years after the bond became due and payable. On leave of court the defendant pleaded *non est factum* without oath.

In this state of the pleadings the plaintiff proved by a witness that the cause of action, with the exception of the date, name of the payee and the signature of the maker, was in his handwriting; that the signature was in the proper handwriting of the testator of the defendant, but he was unacquainted with that in which the name of the payee was written. He had no recollection whatever of having prepared the paper, and only knew the fact at the time of the trial from his recognition of his handwriting. The plaintiff further proved by the same

witness, that about the date of the single bill sued upon, it was agreed between the plaintiff and defendant's testator, and Mrs. Rebecca Boarman, that the purchase money of certain real estate, sold by said testator for $2000, should be divided between plaintiff and Mrs. Boarman, so as to give her one-third part thereof; that the reason of said agreement was, that the land had been deeded many years before by Benedict L. Boarman to said testator, and the plaintiff claimed that it was so deeded in secret trust for the benefit of the grantor's wife, and of his only child, the wife of the plaintiff, but said testator denied said trust and declared that he so agreed as an act of generosity, so far as plaintiff's wife was concerned. The note payable to Mrs. Boarman for $666.66⅔, bearing date the same day, and in the same form as that sued upon, was also offered in evidence. It was also given in evidence that Benedict L. Boarman was largely indebted at the time of the execution of the deed to the testator; that there was also a bill of sale executed by the said Benedict, (about the same time as his deed for his lands,) to said testator, for certain of Boarman's negroes. Defendant's testator denied all secret trusts both in regard to the land and negroes. The defendant then offered in evidence the records of two suits in Charles county court, brought by the defendant's testator against the plaintiff. To the admissibility of these records the plaintiff objected, and the reception of them constitutes his first bill of exceptions.

The second exception of the plaintiff was to the admission on the part of the defendant of his testator's will, whereby it appeared that he claimed the right to dispose, as of his own, the property alleged by the plaintiff to have been conveyed to him in secret trust.

The third exception applies to the prayers granted and refused both on the part of the plaintiff and defendant.

Before noticing each of the exceptions, we deem it proper to state some of the principles of law, which, in our judgment, must control the decision of this case.

The plea on which issue was joined was that of a general *non est factum.* Whatever the law may be elsewhere, in Maryland it imposes on the plaintiff the *onus* of proving both

the execution and delivery of the bond. Proof of execution and possession is sufficient evidence, *prima facie,* of delivery, and in the absence of all proof on the part of the obligor, would entitle the obligee to a verdict. The seal importing a consideration, the latter, *as such,* cannot be inquired into under this plea; but notwithstanding this, the obligee may give in evidence "any thing which goes to show that the instrument of writing was originally void at common law, as lunacy, fraud, coverture, &c., or that it has become void subsequent to the execution and before the bringing of the suit, as by *erasure,* alteration," &c. *Union Bank of Md. vs. Ridgely,* 1 *Har. & Gill,* 416.

In the case now before us, the plaintiff, by the witness Stone, proved the execution of the instrument sued upon, and having it in his possession, was entitled to recover on it in this action, unless it could be assailed on some of the grounds to which we have alluded. This we did not understand the counsel for the appellee to question; but they contended, that inasmuch as the paper bore on its face evident marks of *erasure* and *alteration,* they were entitled to introduce the testimony admitted in the court below and to which the appellant excepted. Judging from the frame of the prayers and the course of argument of counsel, we infer the cause was tried in the court below on the allegation, that the bill exhibited on its face marks of erasure and alteration; and it was in reference to this hypothesis, doubtless, that the testimony contained in the first and second exceptions was introduced. But unfortunately for the appellee, there is nothing appearing in the record going to show in the *slightest* particular the instrument had been subjected to *any* alteration, and therefore, so far as this court is concerned, it would be entirely gratuitous to assume it had undergone any change after its delivery. Whatever may have been the appearance of the paper at the trial, when, no doubt, it was submitted to the inspection of the jury and by them pronounced upon, there clearly is nothing before us to show it was not perfectly fair on its face. We can only decide the case according to the record, and if the party failed to have it put in a proper form, he must abide the consequences. If, in

point of fact, it was obvious on inspection that the paper had been altered, it was easy to have it noticed in the exception, either by an agreement to that effect or by calling to the stand an expert in handwriting, and asking his opinion as to its appearance. Had this been done, and had the witness testified that the paper appeared to have been altered or any portion of it erased, we are of opinion the testimony in the first bill of exceptions, which was excepted to on the part of the plaintiff, would have been admissible as *tending* to show it had not been delivered in its then state. This evidence, however, it is proper to say, can only be admissible on the supposition, that it tends to show fraud on the part of the appellant, by showing his relations and dealings with the testator of the appellee. A witness on the stand could as readily give his opinion on the subject of alteration or erasure as could a juror in the jury box. We are of opinion, however, that under no state of circumstances was the will of William Sanders competent testimony. To allow it to be given in evidence, would be but to permit a party to testify in his own case and in his own behalf. As the case is presented to us on this record, we must reverse the ruling of the court both on the first and second exceptions.

As to the third exception: We think the court properly rejected the prayer offered on the part of the defendant. So far as this *record* shows, there is nothing in the case from which the jury could infer the hypothesis of the prayer. There is nothing from which they could infer, either that the single bill was delivered in blank or that it was delivered when payable to some other person than the plaintiff. As we have before stated, we have no judicial knowledge of the suspicious appearance of the paper, if such in fact existed. We are also of opinion, that the court properly rejected the second prayer of the plaintiff. Independently of the question of law involved in it, there was no evidence of which to predicate it. The name of the obligee is a *material* part of the deed, and delivery in blank is an insufficient delivery unless recognised after the blank is filled. This is the general principle. There are some exceptions to it, but none of them applicable to a case like the one before us. We also think the court erred in

granting the third and fourth prayers of the plaintiff. There was no testimony to support them; nothing to show the single bill was delivered in blank, nor that there had been any erasure of the name of the original obligee and the substitution of that of the plaintiff, with the consent of the testator of the defendant.

We are of opinion, that the first, fifth and sixth prayers of the plaintiff, as offered by his counsel, ought to have been granted. Although there is nothing in the testimony to support the latter part of the first prayer, this circumstance does not vitiate it. It requires the jury to find all that is essential to the plaintiff's right of recovery. All that part of the prayer which follows the word "*unless*" is mere surplusage.

The other three prayers merely assert propositions which are recognized in all the cases, and which we did not understand counsel for the appellee to dispute. Their objection to them rested upon the theory, that they ignored the fact of alteration or erasure after the execution and delivery of the paper. Viewing this case as it is exhibited to us in the record, the qualification of these prayers, as insisted upon by counsel for the appellee, cannot be maintained for the reasons which we have already assigned.

*Judgment reversed and procedendo awarded.*