Mr. Justice Morris
delivered the opinion of the Court:
The record before us in this case, it may be noticed, is open to a considerable extent to the same criticism which we were compelled to make recently in the case of R. R. Co. v. Fitzgerald, 2 App. D. C., 501, on the mode in which the bill of exceptions has been made up. It is "to be hoped that the suggestions there made will receive due consideration from counsel in the preparation of all future causes for the action of this court. The difficulty in the present cause is enhanced by the failure of the'otherwise very able and lucid brief of counsel for the appellants to comply with the rules of this court that require a clear statement of the case and a specific assignment of errors. The statement of the case by counsel in that brief is quite meagre and there is no assignment of errors beyond what we can get by inference from the summary of the pleas that is given and from the argument based thereon. It is to be hoped that counsel will comply more strictly with the rules in this regard in the future.
Assuming that the assignments of error intended for the consideration of this court are contained in the summary of the defendant’s pleas, we find that they are reduced to five, as follows:
1. That the bond in question was not the bond of Moses, and that it was error to hold him or his estate upon it.
2. That the bond, after its delivery by Moses, had been altered without his knowledge and consent; and for such alteration the court should have held it void as to him.
3. That the bond was illegally extorted from Howgate by his superior officers, and therefore should have been held void.
4. That there was no such office created by law as was specified in the bond, and no duties prescribed by any competent authority for the alleged officer; and that, therefore, the bond should have been held void for uncertainty.
*289 5. That there was no breach by Howgate of the condition of the bond.
And in connection with these assignments of error, it is argued that the admission of certain accounts of Howgate, as stated by the accounting officers of the Treasury, and of the judgment against Howgate as evidence in this case, was erroneous; and also that it was erroneous to refuse certain testimony tending to show duress upon Howgate to give the bond. And it is also argued that there is a variance between the bond sued on and that offered in evidence.
1. The first substantial question in this cause is whether the alleged alteration of the bond by the addition thereto of seals after it passed out of the possession of Moses, vitiated the instrument. It is conceded that the signature of Moses to the bond was the genuine signature of the original defendant, William B. Moses; and it is shown conclusively that, when the bond was presented to the War Department for its approval, on March 27, 1878, some, if not all, of the seals were wanting. The document was returned to How-gate by the department for the purpose of having the seals affixed; and it is probably no more than a fair inference that there were no seals affixed at the time, although the witness to the execution of the paper by Moses testified that to the best of his belief the seals were affixed at that time to the signatures of Howgate and Moses. It might have been that only the seal to the signature of Rogers was wanting. But whatever may have been the fact in this regard, it is of course incumbent on the plaintiffs to make at least prima facie proof of the execution of the document that forms the basis of the suit. The plaintiffs have made that proof in this case by showing that when the bond in question was finally delivered to the War Department and was accepted and approved by it, and by such acceptance and approval became operative on April 2, 1878, the signature and seal were affixed thereto purporting to be the signature and seal of the defendant William B. Moses, and that the signature was undoubtedly the genuine signature of the defendant. Proof of *290 ■ the signature carries with it the presumption that the seal likewise was genuine. Hall v. Bainbridge, 17 L. J., Q. B., 317; Phillips on Evidence, Vol. 1, Ch. X, Sec. 2; Edelin v. Sanders, 8 Md., 118. But this presumption, while it makes a prima facie case for the plaintiffs, may be rebutted by the defendant; and it is sought to be rebutted in this instance by the showing of the plaintiffs themselves that, at the antecedent date, when the bond was first presented to the department for acceptance it was incomplete and was refused and returned by the department on that account. But plainly this proves nothing. The fact that a paper was imperfectly executed in the first instance, and that it was returned to the principal party concerned in it for proper execution, raises no presumption whatever against its genuineness, when after-wards it is produced with all the indications of genuine exe* cution. On the contrary, the presumption is that the parties did what they ought to have done. The presumption is that Moses did not intend to perpetrate a fraud upon the United States by palming off upon them as an instrument under seal a document which was not in fact under seal, although he had solemnly certified over his admitted signature that it was under seal. The presumption is that, when he signed' the instrument, he intended to affix his seal to it, and that the omission was one of inadvertence. And the presumption further is that, when the bond was returned to.his principal in order to have the seals affixed, and it was again delivered to the department with the seals affixed, the act of affixing the seal was the act of Moses.
The argument on behalf of the defense is that the return of the bond by the War Department to Howgate was a delivery of it to its own agent; and that, if the sealing was done by Howgate, it was an alteration of the instrument by an agent of the United States. But this is a totally erroneous conception of the relations of the parties. Howgate was an employee, it is true, of the United States; but in this instance he was dealing with them as man with man. He and they were alike principals in this transaction, and it would be a *291 perversion of fact to assume that they were dealing with each other as principal and agent. Whatever agency is to be presumed in the matter would rather be, if any there were at all, of an agency from Moses to Howgate to make the document all that it was plainly intended by both of them that it should be, if we are to assume that they intended to act honestly in the matter.
It is argued, however, that the evidence fails to show that, after the first delivery of the paper to the War Department, it was ever again seen by Moses, or ever sealed by him. But herein is the weakness of the defense. It was incumbent on the defendants to show that it had not in fact been sealed by Moses, or by his authority. The plaintiffs, as we have seen, had made prima facie proof of their case, had proved the signature of Moses, and had thereby raised the presumption of the genuineness of the seal and of the complete execution and delivery of the bond by him; and it was for the defendants to rebut the presumption and to disprove the sealing by Moses. This by their own showing they have entirely failed to do.
The authorities cited on behalf of the defendants utterly fail to sustain their contention. The case of Edelin v. Sanders, 8 Md., 118, so far as it is at all in point, is antagonistic to that contention; and in the cases of Follett v. Rose, 3 McLean, 332 ; U. S. v. Linn, 15 Pet., 290; State v. Humbird, 54 Md., 327, and Chilton v. People, 66 Ill., 501, the instruments sued upon as sealed instruments, when actually produced at the trial, were shown not to have any seals at all affixed to them.
The assignment of error based upon the alleged alteration of the bond in suit after its delivery by Moses we regard as without foundation so far as is shown by anything that appears in the record.
2. The alleged variance between the bond sued on and that offered in evidence, it is claimed, should have excluded the latter from consideration; and it is therefore argued that its admission was error.
*292 When the bond in question was offered in evidence by the plaintiffs in their testimony in chief, the only objection made to it was that of the absence of seals as heretofore stated. There was no reference whatever to the matter of variance. This point was made only after the plaintiffs had closed their case; and it was then made by a motion to strike 'out the bond on the ground of the alleged variance. The variance consisted in the fact that the bond was sued on as bearing date on April 2, 1878, the day of its receipt and acceptance by the War Department, and the bond offered in evidence purported in the body of it to have been executed on “ the — day of March, 1878,” and to bear the' indorsement of its acceptance on the 2d of April, 1878. The date of the delivery of the bond was undoubtedly that of April 2, 1878; and the true date of an instrument is that of its delivery, and not the conventional date specified in the body of the deed. It is only by the act of delivery that a deed becomes effective; and it necessarily follows that a deed may always be declared on as of its true date, regardless of the conventional date of execution. U S. v. Le Baron, 19 How., 73. But how far it is necessary to set forth the conventional date in the description of the instrument sued on and as proper for its identification, it is unnecessary here to determine. It is sufficient for the present case that the objection of the defendants came too late.
As said by the Supreme Court of the United States, in the case of Roberts v. Graham, 6 Wall., 578, “ the plaintiff was entitled to be apprised of the objection if it were intended to be relied upon, at an earlier period in the progress of the trial. The court would doubtless have permitted an amendment, if deemed necessary, upon such terms as the interests of justice might seem to require. The defendant’s right to make the objection was waived and concluded by the delay. He could not make it at the time and in the manner it was presented.”
In the case of Nash v. Towne, 5 Wall., 689, it was said that “no variance ought ever to be regarded as material where *293 •the allegation and proof substantially correspond.” And in the case of the U. S. v. Le Baron, 4 Wall., 642, it was held, upon a declaration and proof very similar to the declaration and proof in the present case, that there was no variance.
The defendants were deprived of no substantial right by the alleged variance, nor were they in any manner taken by surprise; and it is not apparent how a reversal of the judgment upon this ground, if we could assume" that there was error in the ruling, could be of any service whatever to them.
3. The'principal part of the argument for the defendants ,. is addressed to the question of the relevancy and competency of certain transcripts from the Treasury Department which are claimed to have been erroneously admitted in evidence; and in connection therewith to the record of the judgment rendered in the Supreme Court of the District of Columbia against Howgate for the amount of his defalcation. We deem it unnecessary to follow the appellants in their inquiry whether these transcripts were in proper shape to be by themselves independently admitted in evidence, as proof against the defendants, or whether there was any power in the accounting officers of the Treasury Department to restate the accounts of Howgate after they had once been stated and settled, although we find it difficult to see why a settlement with the Treasury should not be vitiated by fraud like any other settlement. The gross frauds and forgeries perpetrated by. Howgate in this instance ought not to receive the sanction of finality with the Treasury Department when they would not receive such sanction in the case of a settlement with private individuals. But that question, in our opinion, is not necessarily involved in this case.
Here we have a judgment against Howgate rendered by a court of competent jurisdiction for the amount of his defalcation or the larger part of it. The transcripts from the Treasury may be regarded simply as serving to identify the items that entered into the judgment as being the items of defalcation. The claim of the United States against How- *294 gate became merged in that judgment; and it was unneces--sary to recur to the transcripts from the Treasury for any purpose, except possibly for the mere purpose of the identification of the items. The introduction of the transcripts, therefore, did the defendants no harm;, at most, they were only surplusage; and it is well settled that, even if such testimony was improperly admitted, the error, if error there was, constitutes no reason for a reversal of the judgment. Mining Co. v. Taylor, 100 U. S., 37; Chicago v. Greer, 9 Wall., 726; Cavazos v. Trevino, 6 Wall., 778.
The judgment rendered against Howgate was, when identified as stated, evidence of his defalcation. It was proper and competent evidence against his sureties, although not conclusive. Drummond v. Prestman, 12 Wheat., 515 ; U. S. v. Allsbury, 4 Wall., 186 ; McLaughlin v. Bank, 7 How., 229.
4. We are next to consider whether the bond in suit was extorted from Howgate by duress; and whether it should not for that reason be regarded as void. The duress which the defendants offered to prove was to the effect that if How-gate did not give such a bond as was required of him, he would not be permitted to retain the office of property and disbursing agent to which he had been appointed. Assuming that the proof offered to show this was competent, with regard to which there may be doubt, we fail to find here any such condition of things as would in law be regarded as duress. There was no threat of loss of office or emoluments. Howgate’s standing in the army was not menaced. He had received a special assignment, presumably sought by himself, to a position in which he was charged with the disbursement of large sums of the public money; and thei War Department, as in the case of other analogous offices, naturally sought to secure the faithful expenditure of that money, and made his appointment to the position, or his continuance in it, dependent upon his giving bond. This cannot be regarded as duress under any reasonable construction of law. Soule v. U. S., 100 U. S., 12.
*295 5. Nor, in the next place, is it oí any consequence whether there was any statute creating and defining the duties of the “ property and disbursing agent ” of the Signal Service. The bond, at least, was a voluntary bond, intended to subserve a lawful purpose, and not objectionable upon any ground of public policy; and therefore it is a valid obligation. Jessup v. U. S., 106 U. S., 147 ; U. S. v. Hodson, 10 Wall., 395 ; Tyler v. Hand, 7 How., 573.
But it is not correct to say that, at the time when this bond was given, there was no statute defining the duties of the “property and disbursing agent” of the Signal Service of the United "States Army. As far back as the year 1867 the Signal Service had been organized and this very office created by the War Department with its appropriate duties; and in a clause in the Army Appropriation act of June 16, 1874 (18 Stat., 72), Congress gave its express sanction to the organization, and provided that “the Signal Service shall be maintained as now organized under the authority of the Secretary of War.”
. There is a manifest distinction between this case and those cited by the appellants in their brief. As, for instance, in the case of United States v. Jackson, 104 U. S., 41, the bond was defective, which was given by a collector of taxes, inasmuch as it did not specify the district for which he had been appointed. There is no such office as that of “ collector of taxes ” at large. But the office of “ property and disbursing agent ” of the Signal Service was an actual office, created by the Secretary of War and sanctioned by Congress, as we have already seen.
It is unnecessary to pursue the subject further. We fail to find any substantial error in the record that would warrant Our interference with the judgment rendered by the court below against the appellants; and that judgment is therefore affirmed.
Note. — This case was heard on appeal in the Supreme Court of the United States, eight justices sitting, and the *296 judgment below was affirmed in January, 1895, by a divided court. A motion for a rehearing was subsequently granted, and the case continued to be heard by a full bench. — Reporter.