# THE CONOWINGO LAND COMPANY OF CECIL COUNTY, MD., A Corporation,

## *vs.*

# GEORGE K. McGAW.

*Specialties: execution and delivery; possession; presumption;
seal; effect of—; corporate seal; evidence; pleading; non
est factum; consideration implied; special pleas; fraud
and ultra vires; "never indebted"—improper plea.
Sealed instrument of indebtedness: implied
promise to pay.   Prayers: too general.
Corporations: promoters; payment
for land in stock; not entitled to
be reimbursed in
money.*

While the mere presence of a corporate seal attached to a note does not necessarily render the instrument a specialty, yet when the words in the body of an instrument refer to the seal, and nothing on the face of the instrument shows any contrary intention, and the obligation is declared on as a specialty, it is to be presumed that the instrument is such.         pp. 646, 647

In the absence of any by-law or other law or rule requiring a certificate of indebtedness signed by the treasurer of the corporation, with the corporate seal attached, attested by the secretary, does not require the signature of the president. p. 648

In a suit upon a certificate of indebtedness, it is not reversible error to have introduced the certificate in evidence, prematurely, when subsequently its execution and delivery were sufficiently proved.                                  p. 648

Proof of execution and possession of a specialty is *prima facie* evidence of delivery, and in the absence of all proof by the obligor, it entitles the obligee to a verdict.         p. 648

Under the plea of *non est factum*, the consideration implied from a seal can not be inquired into; nor, under such a plea, can a specialty be excluded from evidence on the ground that it was fraudulent or *ultra vires*.                          p. 648

In order to create a writing obligatory, it is not necessary that the instrument should contain an express promise to pay the sum named therein.                          p. 649

A writing under seal that on its face shows the maker to be a debtor to the party named, or bearer, charges the maker with the payment of the money.                          p. 649

A prayer, that under the pleadings and evidence in the case the plaintiff is entitled to recover a verdict, etc., is too general.
                                                             p. 650

A seal imports a consideration.                          p. 652

In a suit upon a specialty, the presence of the seal makes erroneous an instruction that there was no evidence of any consideration.                          p. 652

The plea of never indebted as alleged is improper in debt on specialties.                          p. 652

The defense of *ultra vires* must be pleaded specially.    p. 653

Parties who purchase property and convey it to a corporation in payment for stock of the company, can have no claim upon the company for the repayment of the purchase money paid by them for the land.                          p. 653.

The mere fact of a corporate certificate of indebtedness being under seal, will not preclude the defendant from showing, if it can, that there was no consideration for the certificate, or that the directors had no authority to authorize the issue.    p. 653

*Decided January 13th, 1915.*

Appeal from Baltimore City Court.  (SOPER, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Thomas H. Robinson* and *James McEvoy,* for the appellant.

*W. Irvine Cross* (with whom was *William T. Warburton* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee sued the appellant on three certificates of indebtedness, two being for $5,000 each, and the other for $3,150. The form of the three (except as to the amount) is the same and is as follows:

"This is to certify that the Conowingo Land Company of Cecil County, Maryland, a corporation, is lawfully indebted to bearer in the sum of five thousand dollars ($5,000.00) with interest at the rate of six per centum per annum from the first day of April, 1902, until paid. The same being a part of the purchase money advanced and paid for the real estate of said company, and in order to secure its repayment, with interest, this certificate of indebtedness and negotiable instrument is made, executed, issued and delivered, pursuant to resolutions authorizing the same, duly passed by the Board of Directors of said Land Company.

(Conowingo Land     Witness the signature of the
      Company       Treasurer, together with the seal
   Incorporated     of said corporation, annexed
      1902          hereto, duly attested by its Sec-
   of Cecil         retary.
   County)                    Geo. K. McGaw,
Attest:                               Treasurer.

Chas. R. McConkey, Secretary."

The *narr.* originally contained six common counts, and a special count, but later the seven counts were withdrawn, with leave of Court, and an amended declaration was filed containing three counts, in each of which it is alleged that on the 13th day of January, 1903, the defendant by its writ-

ing obligatory in the following language (one of the certificates being then set out in each count) promised to pay, etc.

The defendant filed six pleas: 1st. That the alleged cause of action did not accrue within three years before the institution of this suit; 2nd, that it did not accrue within three years before the filing of the amended declaration; 3rd, that the alleged deeds are not the defendant's deeds; 4th, that the alleged paper writings were procured by the fraud of the plaintiff; 5th, that the alleged writings obligatory were procured by the fraud of the plaintiff; and 6th, that defendant was never indebted as alleged. The plaintiff demurred to the first and second pleas, joined issue on the third, traversed the fourth and fifth and joined issue on the 6th. The demurrer to the first and second pleas was sustained and there was a joinder of issue on the replications to the fourth and fifth pleas. The case was tried before the Court and resulted in a verdict for the plaintiff for $22,618.00, and this appeal was taken from the judgment rendered thereon.

1. The appellant contends that the papers sued on were not writings obligatory—not to be treated as specialties—and hence the limitation of three years was applicable. It is true that it does not necessarily follow that because the seal of a corporation is attached to a note it is a specialty, but the cases cited by the appellant support, rather than refute the theory that these certificates are instruments under seal. In *Jackson* v. *Myers*, 43 Md. 452; *Muth* v. *Dolfield*, 43 Md. 466, and *Smith* v. *Woman's Medical College*, 110 Md. 441, in determining whether the instruments sued on were specialties, the Court emphasized the fact that there was nothing on the face of either of them to indicate that the seal was intended to be affixed. In *Smith* v. *Woman's College* it is said: "As no reference is made in the body of the instrument sued on in this case to the corporate seal impressed thereon, and as there is nothing on the face of the paper to indicate that it was intended to be issued as. a specialty, we think that unquestionably, under the previous decisions of this Court, as well as upon the authority of the text writers quoted above,

the instrument must be considered a simple contract obligation, and not a specialty."

The cases cited in addition to those in 43 Md. were *Hamburger* v. *Miller*, 48 Md. 317, and *Metropolitan Life Insurance Co.* v. *Anderson*, 79 Md. 375, and the text books referred to were 4 *Thompson on Cor.*, sec. 5053, and 2 *Cook on Stock and Stockholders and Corporation Law*, sec. 761. The instruments before us on their face expressly provide for the seal being annexed—"Witness the signature of the treasurer, together with the seal of said corporation, annexed hereto, duly attached by its secretary"—and the corporate seal was affixed to each. If the corporation intended to execute specialties, it would have adopted the language used, or something equivalent to it, and in the absence of anything on the face of the certificates showing a contrary intention, we are of the opinion that these instruments are specialties.

But in addition to that, the amended declaration declared on them as writings obligatory. In *Smith* v. *Woman's College, supra,* where the declaration was framed in debt on a specialty, and the pleas filed were that the defendant was never indebted as alleged and it did not promise as alleged, this Court held that the pleas were not good, and therefore the lower Court erred in entering judgment against the plaintiff for his refusal to reply to them. That was a suit under the Practice Act of Baltimore City (Chapter 184 of the Acts of 1886), and although the Court held that the instrument sued on was not a specialty, yet because the declaration was framed in debt on a specialty those pleas were held to be bad. So in this case, as the instruments were declared on as specialties, pleas of the statute of limitations applicable to simple contract debts were not good, and hence the demurrer was properly sustained.

2. Ten exceptions were taken to rulings on evidence. Some of them do not now seem to be pressed, and without discussing all of them separately, we are of opinion that there was no injurious error in the rulings. The fifth exception was taken to the Court's permitting the three papers sued

on to be offered in evidence.   The reasons alleged in the appellant's brief for excepting to that action of the Court are:  (*a*) Because they were not writings obligatory; (*b*) "Because according to the uncontradicted evidence there was no consideration for the appellant to give to McGaw, or any other person the obligations sought to be collected in this proceeding"; (*c*) "Because under the facts disclosed by the record in this case the said paper writings were illegally and fraudulently issued"; and (*d*) Because the proceedings of the directors and stockholders of the appellant in reference to these instruments were *ultra vires.*

Objection (*a*) is answered by what we have already said. Treating the plea of *non est factum* as a good plea, which we will discuss later, it was incumbent on the plaintiff to prove the execution and delivery of the certificates; and when that was done they were at least *prima facie* valid, being signed by the treasurer and the seal, attested by the secretary, being affixed, as in our judgment the signature of the president in the absence of some by-law or something to require it, was not necessary.  The offer of the certificates in evidence at the time they were was possibly permature, but the resolutions of the directors authorizing the debts alleged to be due the plaintiff and Mr. Harlow to be secured in some way were already in evidence, and if it can be said that their execution and delivery were not then sufficiently proved they were proven subsequently, and hence the defendant was not injured.   In *Edelin* v. *Sanders,* 8 Md. 118, on page 130, it was said that: "Proof of execution and possession is sufficient evidence, *prima facie,* of delivery, and, in the absence of all proof on the part of the obligor, would entitle the obligee to a verdict.   The seal importing a consideration, the latter, as such, cannot be inquired into under this plea"—referring to a plea of *non est factum.*   They could not have been excluded from evidence on the ground that they were alleged to be fraudulent, nor could they have been excluded because they were *ultra vires,* as will be seen later, in discussing the prayers.

It may be well, in passing, to say that in order to be writings obligatory it was not necessary that these instruments should contain an express promise to pay the amounts respectively named. In *Cover* v. *Stem,* 67 Md. 449, CHIEF JUDGE ALVEY said: "No precise form of words is necessary to create a bond or obligation. Therefore, any memorandum in writing under seal, whereby *a debt* is acknowledged to be owing, will obligate the party to pay; for it is said that any words which prove a man to be *a debtor,* if they be under seal, will charge him with the payment of the money." In *Feeser* v. *Feeser,* 93 Md. 716, an instrument under seal by which the obligor declared that a certain sum was due to the obligee, but making it payable after his death by the obligor's executor, was held to be a valid obligation binding on the estate of the maker, since it created *a debitum in praesenti.* See also *Junkins* v. *Sullivan,* 110 Md. 539. As these instruments read: "This is to certify that the Conowingo Land Company * * * is lawfully indebted to bearer," etc., and were under seal, there can be no doubt that they show on their face the company to be a debtor, and it is charged with the payment of the money, unless of course some sufficient defense is made and sustained.

3. The Court granted the following prayer offered by the plaintiff: "The plaintiff asks the Court to instruct the Court sitting as a jury that under the pleadings and evidence in this case the plaintiff is entitled to a verdict for the full amount of all three of the writings obligatory offered in evidence, with interest thereon at six per cent from the 2nd day of April, 1902."

There was error in granting that prayer, as it not only excluded from the consideration of the Court, sitting as a jury, all questions of fact, but it is too general. Without now discussing them, there were disputed questions of fact to be passed on. It is contended, however, on the part of the appellee, that by reason of Section 9 of Article 5 of the Code, the ruling of the Court on that prayer cannot be objected to in this Court, as there was no special exception to it. The

appellee relies on *Morrison* v. *Hammond,* 27 Md. 604, *Everett* v. *State,* 28 Md. 207, and *Franklin* v. *Claflin,* 49 Md. 24. It may be admitted that some of the expressions in the opinion in *Morrison* v. *Hammond,* if they stood alone, might furnish some ground for the contention of the appellee, but no decisions of this Court have approved such a prayer as the one now before us, and there are a number of later cases distinctly disapproving prayers in that form. The Act of 1862, Chapter 154, was certainly not intended to permit the Court to instruct the jury what their verdict should be on all the evidence in the case, when the material facts are disputed, or to deprive the losing party from having such an instruction reviewed, unless he specifically excepted to every part of the evidence. The objection to this prayer is not so much that it assumes facts, as that it instructed the Court, sitting as a jury, what conclusion he must reach from the evidence in the case. It has been determined in many cases that an instruction that under the pleadings and evidence the plaintiff *is not* entitled to recover is erroneous, because too general and indefinite. A prayer that under the pleadings and evidence the plaintiff is entitled to recover cannot be said to be freer from such objections. In 2 *Poe,* sec. 297, it is said that, "it has been the settled practice since the passage of the Act of 1825, Chapter 117, that the Court cannot properly grant a prayer framed in the very general terms that 'upon the pleadings and evidence,' or 'upon the whole case,' the plaintiff is, or is not, entitled to recover, The objection to such a prayer is, that it is too general. It does not point out any particular ground upon which the right to recover is asserted or denied, nor does it direct attention to any particular error or omission in the proof, nor raise any definite question as to its sufficiency. * * * Under this statute general prayers are wholly improper,—as, for instance, 'That under the pleadings and evidence in the case, the plaintiff is not entitled to recover'; for when they come to be considered in the Court of Appeals, it will be obviously impossible to ascertain from the record what precise point was decided

by the lower Court; and hence to permit them would be to renew the mischief intended to be remedied by the Act." That Act is now the first clause in section 9 of Article 5.

It is true that in many cases in which such decisions have been made, the prayer was rejected below, and hence was not an "instruction actually given," but that is by no means so with all of them. In *Mottu* v. *Fahey,* 78 Md. 389, on page 394, JUDGE FOWLER said: "The first prayer of the appellee should have been refused. It instructs the jury that on the pleadings and evidence in this case their verdict must be for the plaintiff for the property described. It has been held that instructions like this are defective * * * because they are expressed in such general terms that it is impossible to ascertain from them or the record exactly what point was intended to be decided by the lower Court." In *Calvert Bank* v. *Katz,* 102 Md. 56, the prayer granted was, "that the undisputed evidence in this case shows that the defendant is indebted to the plaintiff in the sum of one hundred and sixty-seven dollars and fifty-one cents under the pleadings in this case, and their verdict will therefore be for the plaintiff for that amount with interest from December 23, 1901, to date,"—the balance of the prayer then instructed the jury as to the claim of the defendant for a deduction. On page 61 JUDGE JONES said: "There was manifest error in this instruction. It usurped entirely the function of the jury. It found for them the ultimate facts, which it was their province to find, to wit, the indebtedness of the defendant and the amount, and told them that those facts which had been put in issue by the pleadings and were contested throughout had been established as a verity by undisputed evidence. It is error for the Court to assume the existence of facts and take away from the jury the finding of the same." In *Palatine Ins. Co.* v. *O'Brien,* 107 Md. 341, JUDGE BURKE said on page 357: "The plaintiff's first prayer, which told the jury that under the pleadings and evidence in the case their verdict must be for the plaintiff, was too general and

indefinite, and should not have been granted." In all of those cases the judgments were reversed.

It is clear, therefore, that there was reversible error in granting the plaintiff's prayer. The defendant's first prayer was properly rejected. The certificates made a *prima facie* case, as we have seen, and the Court could not say there was no evidence legally sufficient to entitle the plaintiff to recover. Its second prayer was also properly rejected for reasons already stated. The third was intended to present the question of the consideration for the certificates, and the fourth whether the defendant had the power to issue them.

. Inasmuch as the seal imports consideration it could not be properly said that there was no evidence legally sufficient to show any consideration—especially when taken in connection with the resolutions of the directors in the record. This prayer refers to the pleadings, and as the case was tried before Ch. 109 of the Acts of 1914 took effect (Sept. 1, 1914) it is unnecessary to consider that Act. The plea of never was indebted as alleged "always was and still is improper" in debt on specialties, 1 *Poe*, sec. 625. Therefore, no question as to the consideration could properly be raised by that plea. The only one under which it could be claimed to be was the third— "that the alleged deeds set out in the plaintiff's declaration are not the defendant's deeds." That was not in proper form, as it was not sworn to, as required by section 11 of Article 75, but as issue was joined on it we will treat it as sufficient, *Milburn* v. *State*, 1 Md. 12. But as we have already seen, the consideration cannot be inquired into under that plea, although as held in *Edelin* v. *Sanders, supra,* following *Union Bank* v. *Ridgely*, 1 H. & G., on page 416, the obligor may give in evidence anything which goes to show that the instrument was originally void at common law. In 1 *Poe*, sec. 625, Mr. Poe takes the position that that is no longer be allowed in this State, and that the plea of *non est factum* "will operate now as a denial merely of the execution, in point of fact, of the specialty sued on," but without deem-

ing it necessary to pass on that, it could not properly be said that there was no evidence legally sufficient to show any consideration, and hence the prayer was properly rejected.

The fourth prayer asked the Court to say that there was no evidence legally sufficient to show that the defendant had legal authority to execute and issue to the plaintiff the paper writings offered in evidence, and therefore the plaintiff was not entitled to recover. That likewise referred to the pleadings, and, without discussing other points, the general rule seems to be well established that the defense of *ultra vires* must be pleaded specially. *France on Principles of Cor. Law* (2nd Ed.), 125; 5 *Ency. of Pl. and Pr.*, 95; 3 *Thompon Cor.* (2nd Ed.), sec. 3255, 10 *Cyc.* 1156. That is certainly the safe and fair rule, and we think that the prayer was properly rejected for that reason, as well as because it could not properly be said that there was no evidence legally sufficient, etc.

We must not, however, be understood as holding or intimating that the fact that the certificates are under seal will preclude the defendant from showing, if it can, that there was no consideration for the certificates, or that the directors had no authority to authorize them to be given, but we only hold that the prayers as framed were properly rejected. There can be no doubt that if the stock was paid for by the conveyance of the Bell property, and the amounts advanced by Messrs. McGaw and Harlow, for the purchase of the property was not included as a part of the consideration for the property, there was nothing due them by the company on account of that conveyance. Under those circumstances the directors would have had no power to bind the company for the amounts so advanced by them. The provisions in the statute in reference to payment of the stock of a corporation with property would be rendered nugatory and of no protection, if parties could purchase property, convey it to a company organized by them in payment of the stock of the company, and then have the directors (the stockholders and directors being the same persons) pay, or provide for paying

them the amount of purchase money which they had paid for the property, although they had used the property in payment of the stock.  Sections 61 and 62 of Article 23 of the Code of 1888 (which was in force at the time of this transaction) were intended to protect subsequent stockholders and others dealing with the company and required records of payment of stock with property to be so kept that those interested could readily ascertain the facts.  In this case Mr. McGaw sold his stock within two or three years.  Acceptance of property in payment of stock was done under section 61 by the stockholders in meeting assembled for the purpose of considering the propriety of receiving the subscription and of fixing the terms upon which it should be received.  Those interested therefore look to the proceedings of the stockholders and not to those of the directors to ascertain the terms of such subscriptions.

Mr. McGaw, however, testified without objection that, "We incorporated the Conowingo Land Company and transferred this property to them, having Mr. Caldwell do it, subject to this first mortgage, and these indebtedness that they owed Mr. Harlow and myself," etc.  Of course, if it can be legally shown that the property was conveyed to the company subject to the amount paid out by Messrs. McGaw and Harlow, as well as the Bell mortgage, a very different case from that above referred to would be presented.  As the case will have to be retried, it is hoped that the actual facts can be ascertained, and that they can be made clearer than many of the important ones in the record are.  If that is done, there can be no great difficulty in applying the law to the facts proven.

> *Judgment reversed and new trial awarded, the appellee to pay the costs, above and below.*