**GENERAL PETROLEUM CORPORATION OF CALIFORNIA v. SEABOARD TERMINALS CORPORATION.**

No. 6077.

District Court, D. Maryland.

July 9, 1937.

Hargest, LeViness, Duckett & McGlannan (by Edward E. Hargest, Jr., and O. Bowie Duckett, Jr.), of Baltimore, Md., for plaintiff.

Barton, Wilmer, Bramble, Addison & Semans (by F. Fulton Bramble and Wm. R. Semans), of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The question now presented arises on the plaintiff's demurrer to the defendant's first, second, ninth and tenth pleas. The plaintiff, a California corporation, is suing the defendant, a Maryland corporation, on the latter's written guaranty dated September 3, 1926, and therefore now more than three years but less than twelve years old. The question presented is whether the applicable Maryland statute of limitations is that of three years for a simple contract, or twelve years for a contract under seal sometimes called a "specialty," Maryland Code, art. 57, §§ 1 and 3.

The guaranty reads as follows:

"September 3, 1926.

"In consideration of the execution of the foregoing contract, the Seaboard Terminals Corporation, a corporation, hereby guarantees the prompt, full and faithful performance of the foregoing contract by

Seaboard Midland Petroleum Corporation, and hereby waives notice of any change or modification of said contract and agrees that it shall not be relieved of responsibility hereunder by reason of any change, alteration or waiver of strict performance by General Petroleum Corporation of California.

  "Seaboard Terminals Corporation
   "By James F. Foster
   "President
   "By M. M. Fennell,
   "Asst. Sec'y."

Immediately opposite the name of the guarantor and partially overlapping the word "corporation" is an impression on the paper of the seal of the "Seaboard Terminals Corporation—corporate seal 1924 Maryland"—and in the margin to the left is also the impression of the corporate seal of the General Petroleum Corporation.[1]

The "foregoing contract" referred to in this guaranty (the guaranty being attached thereto) is a formal and elaborate contract of fourteen typewritten pages dated September 3, 1926, executed between General Petroleum Corporation of California, the plaintiff herein, and the Seaboard Midland Petroleum Corporation of Maryland, which is alleged to be a wholly owned subsidiary of the defendant guarantor. The declaration alleges that the contract and guaranty constituted together a single specialty in two parts, one the contract and the other the guaranty. On inspection it appears that the contract was formally signed and sealed by both parties with recitals as to the seals and the guaranty immediately follows the contract on the next typewritten page (numbered 15) and was physically annexed to the contract, to which it expressly refers, and is evidently in the same typewritten form and style, and is dated the same day as the contract. And the guaranty is signed for the corporate guarantor (the alleged parent corporation) by the same officers that executed the contract for the subsidiary. The contract covered the sale of a very large quantity of United States Motor Gasoline by the General Petroleum Corporation to the Seaboard Midland Petroleum Corporation. It does not appear where the contract was executed or delivered but it contemplated deliveries during the year 1927 principally at Baltimore, Maryland.

It is alleged in the declaration that under the contract, with some modifications, the General Petroleum Corporation delivered to the purchaser in Baltimore City, 65,858,-469 gallons of gasoline at an aggregate price of $5,901,314.92, all of which was paid except $111,630.03, for which sum the plaintiff sued the Midland Company in the Court of Common Pleas of Baltimore City and obtained a judgment on June 24, 1934, in the amount of $14,244.70, which judgment it has not been able to collect; and therefore the suit is brought on the guaranty to collect the amount of the unpaid judgment with interest. It was apparently assumed by both counsel at the oral argument that the period of limitations began to run from the time of non-payment for the gasoline and not from the date of the judgment and inability of the plaintiff to collect it.

The defense interposed by the first and second pleas is the three-year period of limitations which, of course, constitutes a good defense if the guaranty sued on is to be treated as a simple contract and not as a sealed instrument, that is, a "specialty." It will be noted that while the guaranty bears the corporate seal of the defendant in this case in juxtaposition and in obvious relation to the execution of the paper by the defendant, there is no written reference in the guaranty itself to the affixed seal. In view of this fact it is the defendant's contention that the seal must be treated merely as an authentication of the execution of the paper by the properly authorized officers of the defendant corporation, and must not be considered to have the effect of making the guaranty a specialty. Whether this position is sound is the question presented by the demurrer to the pleas.

The Maryland statute prescribing the period of limitations in a suit on a specialty (Code, art. 57, § 3) reads as follows: "No bill * * * or other specialty whatsoever * * * shall be good and pleadable, or admitted in evidence * * * in this State after * * * the debt or thing in action is above twelve years' standing." This statute of limitations does not itself define what constitutes a specialty, nor is there any other Maryland statute so far as I am aware which does. It is a well-known term of the common law which in Maryland and elsewhere by ju-

---

[1] This appears from the original contract exhibited to the Court. In this respect Plaintiff's Exhibit No. 1 is not an exact copy.

dicial decision denotes a legal instrument under seal. It is conceded by both parties that the period of limitations here, is to be determined by the *lex fori* and therefore the applicable Maryland statute governs. But the legal controversy between the parties is whether the Maryland judicial decisions, or the general law, is to determine in this case whether the particular instrument sued on is a "specialty." The defendant's counsel contends that the Maryland decisions are controlling and that the case of Smith v. Woman's College, 110 Md. 441, 445, 72 A. 1107, 1109, (where a corporation was sued on a promissory note containing its seal without reference thereto in the body of the note) is decisive in favor of the defendant because it was there held that, while under such circumstances the seal opposite the signature of an individual would be sufficient to make the contract a specialty, the same result did not obtain with respect to a corporate seal, because at common law a corporation could execute legal documents only under seal and therefore the mere presence of its seal on its contract was not of itself sufficient to make the instrument a specialty. The doctrine of that case is contained in the sentence: "As no reference is made in the body of the instrument sued on in this case to the corporate seal impressed thereon, *and as there is nothing on the face of the paper to indicate that it was intended to be issued as a specialty*, we think that unquestionably, under the previous decisions of this court, as well as upon the authority of the textwriters quoted above, the instrument must be considered a simple contract obligation, and not a specialty." (Italics supplied.)

On the other hand the plaintiff's position is that the question presented, construction of a written commercial instrument, is a matter of general law on which the federal decisions are here controlling, and it is said a contrary rule has been announced in this Circuit in the case of Federal Reserve Bank v. Kalin, 81 F.(2d) 1003, in which the Circuit Court of Appeals in an opinion by Judge Parker recently held that the signature of an *individual* defendant to a promissory note with the affixation of the word "seal" in paranthesis thereafter, constituted a sealed obligation to which was applicable only the longer period of limitations (ten years) and not the shorter period (three years) provided by the statutes of North Carolina where the suit arose (C.S.N.C. §§ 437, 441). It is to be

observed, however, that the Kalin Case did not deal at all with the subject of corporate seals, and on the question as to conflict of laws, what was there said as to the controlling effect of federal decisions had relation to the application of the Conformity Act (U.S.C.A. title 28, § 724) which relates to procedure, and not to the Rule of Decisions Act (U.S.C.A. title 28, § 725) which relates to matters of substantive law.

██ There is apparently no federal decision which determines the effect of a corporate seal under the circumstances here disclosed. But the modern general law on the subject may be taken to be that stated by Professor Williston in his work on Contracts (Rev.Ed.1936) vol. 1, § 271A, as follows: "The chief value of the corporate seal now is as *prima facie* authentication that the document is the act of the corporation and that the officers who have executed it have been thereunto duly authorized. Under the modern view this function of the corporate seal, however, must be distinguished from its use as a general seal. For example, the mere fact that the corporate seal appears on the instrument *other than in the usual place of the private seal* would not make the instrument a deed of specialty in the absence of a recital of affixing the seal or of extrinsic evidence showing an intention to have it serve the function of a general seal. In other words, it is a question of fact in the specific case whether the corporation has employed its corporate seal as a general seal or whether it has adopted any other permissible form of seal as convenient for the particular occasion." (Italics supplied.)

See, also, Thompson on Corporations (3d Ed.) vol. 3, § 2029, p. 646, where after somewhat similar discussion it is said: "The form and character of the instrument, together with the purpose of its execution, may be examined in case of uncertainty in determining whether it is sealed or unsealed." And this view is directly supported by what was said by the Court of Appeals of the District of Columbia in Brown v. Commercial Fire Ins. Co., 21 App.D.C. 325, 336.

██ In Conowingo Land Co. v. McGaw, 124 Md. 643, 645, 93 A. 222, 223, Chief Judge Boyd, in a review of the Maryland cases dealing with the effect of the use of corporate seals, including Smith v. Woman's College, said: "It is true that it does

not necessarily follow that because the seal of a corporation is attached to a note it is a specialty, * * *." It is also to be noted that the Maryland cases on this point all (with the exception of Metropolitan Life Ins. Co. v. Anderson, 79 Md. 375, 29 A. 606, which is substantially to the same effect as Brown v. Commercial Fire Ins. Co., 21 App.D.C. 325) were suits on promissory notes, and in the cases preceding Smith v. Woman's College (decided prior to the Negotiable Instruments Act of 1898 [Code Pub.Gen.Laws Md.1924, art. 13, § 13 et seq.]) the seal if effective would have destroyed the negotiability of the note; and in addition, most, if not all the seals set up were not specially impressed corporate seals but only a symbol or emblem of the seal printed in the body of the not and not in juxtaposition to the corporate signature. So far as noted, Smith v. Woman's College is the only case which states the rule in terms of requiring something on the face of the instrument to show that the corporate seal was intended to make a specialty. The wording is set up as establishing a more rigid rule than that generally recognized, which is that the mere presence of the seal does not necessarily establish the character of the paper as a specialty, but that the form and character of the paper as a whole, together with the purposes of its execution, must be looked at to determine whether it is a sealed document. All the circumstances considered, it may well be doubted whether the statement of the Maryland rule, which has heretofore been applied chiefly in cases of promissory notes, is really substantially different from the general law, or whether it would be applied to a contract of guaranty such as appears in this case. It is, however, for the reason hereinafter stated, not necessary to decide this question at the present time.

█ If it be assumed that the Maryland decisions, as applied to the present case, afford a different answer as to whether the instrument is a specialty than would result from the general law, then I am of the opinion that they should be followed in this case because they are in the nature of a construction of the local statute of limitations as to what constitutes a specialty. It is clear enough that if the statute had itself defined what constitutes a specialty, that definition would be here controlling. Alrope Corporation v. Rossee (C.C.A.5) 86 F.(2d) 118. Here, the statute does not

define a specialty but the judicial decisions do, and they must be taken as a construction of the statute. It is true that Smith v. Woman's College did not directly deal with the statute of limitations, but nevertheless it was therein determined that the particular instrument sued on for the reasons given did not constitute a specialty.

█ Recent decisions of the Supreme Court have emphasized the force of the federal rule of decisions statute in requiring conformity with the decisions of the highest court of a particular State construing and applying State statutes. In Burns Mortgage Co. v. Fried, 292 U.S. 487, 495, 54 S.Ct. 813, 815, 78 L.Ed. 1380, 92 A.L.R. 1193, it was said: "We think the better view is that there is no valid distinction in this respect between an act which alters the common law and one which codifies or declares it. Both are within the letter of section 34 of the Judiciary Act (supra [28 U.S.C.A. § 725]). And a declaratory act is no less an expression of the legislative will because the rule it prescribes is the same as that announced in prior decisions of the courts of the state. Nor is there a difference in this respect between a statute prescribing rules of commercial law and one concerned with some other subject of narrower scope. The contention of the respondent that this court announced a contrary view in Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, is not sustained by a careful reading of the opinion in that case." And where, in conflict between state decisions and general law the rule of the latter is doubtful, and nothing is to be gained in the way of general uniformity of the law by applying a rule different from that of state decisions, the latter should be followed. Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398. In Weems v. Carter, 30 F.(2d) 202, 204, the Circuit Court of Appeals for this Circuit, said: "State decisions and laws in regard to Statute of Limitations and rules of property govern the federal courts. Balkam v. Woodstock Iron Co., 154 U.S. 177, 14 S.Ct. 1010, 38 L.Ed. 953." See, also, Savings Bank of Richmond v. National Bank of Goldsboro (C.C.A.4) 3 F.(2d) 970, 973, 39 A.L.R. 1374.

It has also been held that the *lex fori* properly determines whether an instrument sued on is under seal or not, as the answer affects the procedure thereon, Mandru v. Ashby, 108 Md. 693, 71 A. 312; Trasher v. Everhart, 3 Gill & J. (Md.) 234, 246;

United States Bank v. Donnally, 8 Pet. 361, 372, 8 L.Ed. 974; Wells v. Alropa Corporation, 65 App.D.C. 281, 82 F.(2d) 887. But compare American Law Institute Restatement of Conflict of Laws, § 335, which states "The law of the place of contracting determines whether an instrument alleged to be a contract under seal is effectively sealed." And see the Maryland Annotations thereto by Professor Reiblich, recently published.

■ But whether the Maryland law or the general law is here controlling, and if the former, whether it establishes the contract as only a simple contract, need not now be finally decided because the question on the demurrer must be determined by a narrower and technical rule of Maryland pleading. The plaintiff's declaration declares on the guaranty and describes it expressly as a "specialty." The pleas must, therefore, be appropriate to this declaration. The first and second pleas, however, have set up the period of limitations applicable to simple contracts only and not to a specialty. The demurrers to these pleas must, therefore, be sustained. In Conowingo Land Co. v. McGaw, 124 Md. 643, 647, 93 A. 222, 224, the Court said: "So in this case, as the instruments were declared on as specialties, pleas of the statute of limitations applicable to simple contract debts were not good, and hence the demurrer was properly sustained." And in Citizens' National Bank v. Custis, 153 Md. 235, 241, 138 A. 261, 263, 53 A.L.R. 1165, it was said: "As the statute of limitations affects neither the validity nor negotiable character of an instrument, its execution with a seal would continue to make the 12-years' period of limitations applicable, but a different problem is presented with respect to pleading."

The defendant's contention to the contrary is based on the proposition that as the contract sued on is made a part of the declaration, and it appears therefrom that the body of the guaranty contained no reference to the seal, therefore *under no circumstances* can the guaranty possibly be considered a specialty. But I am satisfied the Maryland cases do not go to this full extent or at least it is not now sufficiently clear that they do to so rule upon demurrer. In this connection it is to be noted that not only is the instrument expressly declared on as a specialty but in the second count of the declaration it is also alleged that it was the intention of the parties at the time of the affixation of the defendant's corporate seal to make the instrument a specialty, and other pleas by the defendant in effect assert the contrary. The question whether evidence extrinsic to the document itself will be admissible at the trial on behalf of either party under the pleadings need not now be determined. It may be observed, however, that the Maryland cases relied on by the defendant did not involve the question of the admissibility of such evidence.

■■ The ninth and tenth pleas are respectively that the defendant never promised as alleged, and that it never was indebted as alleged. These are the general issue pleas appropriate to an action in assumpsit on a simple contract. And before the Maryland Act of 1918, c. 392, (Md. Code, art. 75, § 4) they would have here been bad on demurrer as the declaration sues on a specialty. Conowingo Land Co. v. McGaw, 124 Md. 643, 647, 93 A. 222. But by that Act it was provided: "In all actions *ex contractu* there shall be no distinction in the pleadings by reason of the presence or absence of a seal upon any instrument or writing involved in the case, except in so far as the presence or absence of a seal may affect the substantive rights of the parties (such as necessity for a valuable consideration, period of limitation, etc.), as distinct from matters of procedure; * * * and there shall be but one form of action for recovery upon any cause of action arising *ex contractu* or *quasi ex contractu,* namely, the action of assumpsit. * * * Provided, that no period of limitations now prescribed by law with respect to any cause of action now existing or hereafter arising shall be altered by this section. And in any such suit at law it shall be sufficient for the defendant to file a general issue plea that the defendant never was indebted as alleged, or that the defendant never promised as alleged, under either of which forms of plea all matters of defence and discharge shall be admissible in evidence, except any matters which could only be availed of by a special plea, or by a more express denial than such general issue plea, in an action of assumpsit prior to the enactment of this section."

These general issue pleas in assumpsit are, therefore, permissible in this case despite the fact that the contract is sued on as a specialty. But it appears that they are not sufficient in themselves to put in

issue "the execution of a specialty." Roth v. Baltimore Trust Co., 161 Md. 340, 348, 158 A. 32, 36. See also and compare Citizens' National Bank v. Custis, 153 Md. 235, 242, 244, 138 A. 261, 53 A.L.R. 1165.

The demurrers to the first and second pleas are *sustained* and the demurrers to the ninth and tenth pleas are *overruled*.