750 A.2d 1281

ROUSE–TEACHERS PROPERTIES, INC.

v.

MARYLAND CASUALTY COMPANY.

**No. 38, Sept. Term, 1999.**

Court of Appeals of Maryland.

April 13, 2000.

Reconsideration Denied June 2, 2000.

576

William F. Ryan, Jr. (Mark C. Kopec, Whiteford, Taylor & Preston, L.L.P., on brief); William C. Sammons (Michael D. Berman, Boyd K. Rutherford of Tydings & Rosenberg, L.L.P., on brief), Baltimore, for Petitioner/Cross–Respondent.

H. Thomas Howell (Howell & Gately, on brief), Towson, for Respondent/Cross–Petitioner.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

On 13 May 1994, Maryland Casualty Company (Maryland Casualty), Respondent, filed suit against Rouse–Teachers Properties, Inc. (RTPI), Petitioner, seeking damages for the defective design and construction of a building at Maryland Casualty's headquarters. The present appeal arises out of RTPI's unsuccessful efforts to convince the Circuit Court for Baltimore County and the Court of Special Appeals that Maryland Casualty's suit is barred by the relevant statute of limitation and the statute of repose.

## ISSUES

In RTPI's petition for writ of certiorari,[1] we are asked to consider the following issues:

I. Whether the Court of Special Appeals erred in (a) creating a presumption that a contract between corporate parties (the signature page, but not the body, of which contains the parties' corporate seals in conjunction with the

---

1. We granted the petition. *Rouse–Teachers Properties v. Maryland Cas.*, 355 Md. 60, 733 A.2d 1028 (1999).

directional phrase "Affix Corporate Seal") is a specialty and (b) requiring the party being sued on the contract to rebut the presumption by proving that the parties did not intend to create a specialty?

II. Whether the Court of Special Appeals erred in ruling that the statute of repose is waived for construction contract claims on the basis of a judicially created presumption that results in a determination that the underlying contract is a specialty instrument and without affirmative evidence that the parties intended to waive the statute of repose?

III. Whether the trial court erred in determining that a construction contract between corporate parties (the signature page, but not the body, of which contains the parties' corporate seals in conjunction with the directional phrase "Affix Corporate Seal") was a specialty and, therefore, not subject to either the general three-year limitations period or the statute of repose, when the evidence shows that the parties did not intend a specialty?

We also granted Maryland Casualty's protective cross-petition for writ of certiorari, in part, limited to the following issues:

IV. Does a contract executed under corporate seal, which on its face requires each party to affix its corporate seal, constitute a "contract under seal" subject to the 12–year statute of limitations, MD. CODE, *Courts and Jud. Proc. Art.*, Section 5–102(a)(5), as a matter of law, without need for resort to extrinsic evidence?

V. Does the Maryland statute of repose (MD. CODE, *Courts & Jud. Proc. Art.*, Section 5–108) apply to a contract action to compel arbitration in accordance with an agreement to design and construct an office building, where the owner claims purely economic loss from structural defects in breach of the contractor's obligations under the agreement, rather than injury to persons or property resulting from such defects?

Because we answer RTPI's Issue I in the affirmative, and accordingly reverse the Court of Special Appeals on that issue,

it is unnecessary to address the remaining questions advanced by the parties.

## BACKGROUND

On 16 July 1980, Maryland Casualty and McCormick Properties, Inc. (McCormick) entered into a Design Build Construction Agreement (Agreement). The subject matter of the Agreement was the construction of the Technology Center annex of Maryland Casualty's headquarters in Baltimore, Maryland. The forty-two page Agreement detailed thoroughly the scope of the work, completion schedules, costs, and insurance obligations of the parties.

The final section of the Agreement provided an area for the parties to execute the Agreement by signing and affixing their corporate seals. The Agreement concluded as follows:

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

| ATTEST:<br>(Affix Corporate Seal) | MARYLAND CASUALTY COMPANY |
|---|---|
| (signature) | By (signature) |
| ATTEST:<br>(Affix Corporate Seal) | McCORMICK PROPERTIES, INC. |
| (signature) | By (signature) |
| L.O. Gerber<br>President | Alan P. Medinger<br>Vice President—Treasurer |

H.J. Bremermann, Jr., president of Maryland Casualty, and Alan P. Medinger, vice president and treasurer of McCormick, executed the agreement on behalf of their respective corporations. Regarding the attestation lines, Donald D. Hutson of Maryland Casualty and L.O. Gerber of McCormick signed as witnesses of the execution of the Agreement. The corporate seals of both parties were affixed on the Agreement to the left of the attestation lines. After the parties signed the original Agreement, they amended it on five separate occasions. Each amendment concluded with a similar signature section, except the final four amendments added the word "(Seal)" next to the attestation lines.

The Agreement and subsequent amendments were the products of a long and arduous negotiation process. In the four months leading up to the consummation of the Agreement, the parties met frequently, offered proposals and counter-proposals, and exchanged many preliminary drafts of the Agreement. A disputed point of negotiation was the inclusion of express warranties in the Agreement. In a letter dated 2 May 1980, Maryland Casualty requested a ten-year warranty to protect against potential latent defects in the proposed building. McCormick rejected the request and the ten-year warranty concept did not become part of the Agreement as executed. McCormick did extend in the final Agreement limited warranties covering the materials and workmanship of the project. These warranties provided that they would expire two years after the inspection and acceptance of each phase of the project.

Construction of the Technology Center began in July 1980 and was completed in November 1982. Maryland Casualty accepted the building later that month. Before the end of 1982, Maryland Casualty began to notice many flaws in the new building. Major water leaks in the walls, windows, and roof emerged, and numerous cracks formed in the outer facade of the building. Maryland Casualty alerted McCormick to the problems, but despite efforts by both parties, the water penetration problems were not resolved.

In 1988, the owners of McCormick sold the stock of McCormick to a corporate joint venture. The joint venture changed the name of McCormick Properties, Inc. to Rouse–Teachers Properties, Inc. (RTPI). As part of the transaction, RTPI obtained an indemnification agreement from McCormick. Under the terms of the agreement, McCormick indemnified RTPI against contingent liabilities arising from the Technology Center project for a period of five years following the stock-purchase transaction. The indemnification agreement expired on 1 February 1994.

Immediately upon expiration of the indemnification agreement, Maryland Casualty demanded that RTPI enter arbitra-

tion to resolve the extent of RTPI's liability for the defects in the Technology Center. RTPI denied liability and rejected arbitration.

## PROCEDURAL HISTORY

On 18 May 1994, approximately eleven years and six months after the completion of the Technology Center, Maryland Casualty filed a complaint against RTPI in the Circuit Court for Baltimore County. Maryland Casualty's complaint contained five counts. Count one sought a declaratory judgment addressing whether the applicable statute of limitations barred the suit. Count two sought a declaratory judgment regarding the requirement of arbitration under the Agreement. Count three alleged that RTPI breached the Agreement for failing to design the building in accordance with the terms of the Agreement. Count four charged that RTPI breached express warranties arising under the Agreement. Count five claimed that RTPI was negligent in designing and constructing the Technology Center. In RTPI's answer, in addition to asserting a general denial of liability, RTPI contended that Maryland Casualty's suit was barred by the three-year statute of limitations found in Maryland Code (1974, 1998 Repl.Vol.), (CJP) § 5–101 [2] and the three-year limitation in the statute of repose under CJP § 5–108(c).[3]

---

**2.** Section 5–101 states:

**§ 5–101. Three-year limitation in general.**
A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

**3.** The statute of repose, CJP § 5–108 provides, in pertinent part:

**§ 5–108. Injury to person or property occurring after completion of improvement to realty.**
* * * * *

(b) *Action against architect, professional engineer, or contractor.*—
Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more

Both parties moved for summary judgment. In its motion, Maryland Casualty contended that the Agreement was a "contract under seal" and therefore a specialty governed by the twelve-year limitation period under CJP 5–102(a)(5).[4] RTPI insisted again that the Agreement was an ordinary contract with a three-year limitations period.

After a hearing, the Circuit Court granted RTPI's motion for summary judgment as to the express warranties and negligence counts, finding that these claims were barred by the statute of limitations and statute of repose. The Court ruled in Maryland Casualty's favor on the contract count after determining that the claim was not subject to the statute of repose and that the Agreement was a contract under seal subject to a twelve-year limitations period. In accordance with a consent order signed by both parties, the Court ordered the contract count to be submitted to arbitration.

RTPI appealed the Circuit Court's ruling on the breach of contract count to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court reversed the Circuit Court. The court noted that the statute of repose generally did not apply to contract actions, but determined that the statute may have been waived if the Agreement were a contract under seal. Because resolution of whether RTPI waived the statute of repose was a question of fact and dependent on the statute of limitations issue, the court held

---

than 10 years after the date the entire improvement first became available for its intended use.

(c) *Three-year limitation after accrual of cause of action.*— Upon accrual of a cause of action referred to in subsection ... (b) of this section, an action shall be filed within 3 years.

4. CJP § 5–102 states, in pertinent part:

**§ 5–102. Specialties.**

(a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

* * * * *

(5) Contract under seal.

that the Circuit Court's grant of summary judgement was an error.

The court then turned to the signature page of the Agreement to resolve the statute of limitations issue. It explained that:

the attestation clause specifically states "affix corporate seal" when only the word "seal" is needed to identify corporate authority. We hold that, when a contract contains the above clause and the corporate seal, it is presumed to be a specialty contract. We also hold, however, that this presumption is rebuttable rather than conclusive.

When, as here, it appears on the face of the contract that the contract is under seal, the rebuttable presumption that arises shifts to the party who asserts to the contrary the burden of persuading the finder of fact by a preponderance of evidence that the contract was really not intended to be a specialty.

The Court of Special Appeals remanded the case to the Circuit Court to give RTPI an opportunity to rebut, if it could, the newly recognized presumption.

In anticipation of the hearing on remand, the parties entered into certain stipulations and filed them with the Circuit Court on 13 May 1997. The stipulation relevant to our inquiry is as follows:

5. If the Design Build Construction Agreement at issue in this case is not a specialty under § 5–102(a) of the Cts. & Jud. Proc. Article of the Annotated Code of Maryland, the claims brought by Maryland Casualty herein are time-barred.

The Circuit Court held an evidentiary hearing on 15 May 1997. Three attorneys that participated in the drafting of the Agreement, James A. Gordon, Esquire, counsel for Maryland Casualty, and Marilyn Koeppel Ogburn, Esquire, and John Haas, Esquire, counselors for McCormick, testified at the hearing. In addition, the parties introduced the Agreement, its amendments, preliminary drafts, and correspondence written during the negotiation process. Upon review of the evidence, the

Circuit Court found that RTPI failed to rebut the presumption that the Agreement was a contract under seal by a preponderance of the evidence.

RTPI again appealed to the Court of Special Appeals, requesting that it reconsider its earlier holdings that: 1) the creation of a specialty may have waived the statute of repose and 2) the evidence in the case created a rebuttable presumption that the Agreement was a contract under seal. Determining that "neither of the holdings challenged by [RTPI] are patently inconsistent with established principles announced by the Court of Appeals," the Court of Special Appeals rejected RTPI's reconsideration request. The court noted, however, that RTPI "produced strong evidence that the parties did not intend to make a contract under seal." Despite this evaluation of the evidence, the court held that RTPI failed to rebut the presumption as a matter of law.

## DISCUSSION

### A. The Court of Special Appeals' Presumption

As previously noted, the Court of Special Appeals relied upon the directional phrase "Affix Corporate Seal" and the presence of the parties' corporate seals on the Agreement to create the rebuttable presumption that the Agreement was a contract under seal, and therefore a specialty.[5] For reasons explained below, we hold that the basis of the court's presumption is contrary to established law regarding contracts under seal and at odds with the purpose underlying the use of presumptions.

▆▆▆ A presumption is a judicial determination that proof of certain foundational facts establishes the existence of the presumed fact. *See McQuay v. Schertle*, 126 Md.App. 556, 590, 730 A.2d 714, 732 (1999), *cert. denied*, 356 Md. 18, 736

---

5. In their briefs and again at oral argument, both parties' refer to a specialty and a contract under seal interchangeably. The terms are not synonymous. A contract under seal is an instrument included in the larger category of specialties. *See* CJP § 5–102.

A.2d 1065 (1999)(citing Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 1001 (2d ed.1993)). In certain cases, a presumption is an acceptable substitute for actual proof because the established facts, combined with the relevant law, provide a degree of certainty as to the likely existence of the presumed fact. In *Molesworth v. Brandon,* 341 Md. 621, 672 A.2d 608 (1996), we explained the degree of certainty called for in the creation of a presumption. We stated:

> [g]enerally, however, the most important consideration in the creation of presumptions is probability. Most presumptions come into existence primarily because the judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of fact A until the adversary disproves it.

*Molesworth,* 341 Md. at 643–44, 672 A.2d at 619 (quoting McCormick on Evidence § 342 (4 th ed.1992)).

The Court of Special Appeals, in this case, determined that the parties' corporate seals affixed on the Agreement next to the directional phrase "Affix Corporate Seal" rendered the inference that the Agreement was a contract under seal so probable that it was appropriate to presume the Agreement was a contract under seal until RTPI rebutted the presumption. The Court of Special Appeals erred in recognizing a presumption.

In *Gildenhorn v. Columbia Real Estate Title Ins. Co.,* 271 Md. 387, 398, 317 A.2d 836, 842 (1974), we examined the role that sealed instruments play in corporate transactions. We instructed that:

> [i]n the early law it was held that a corporation could not contract except under its corporate seal. This rule persisted, but was increasingly relaxed during the 19th century. Today, in the absence of charter or statute to the contrary, a corporation may bind itself by a writing not under seal to the same extent as an individual.

*Id.* As a result, when a corporate seal appears on a contract we do not conclude that the contract is a sealed instrument.

Rather, we reason that the seal was affixed to the agreement as proof of the signer's authority to bind the corporation because "the main purpose of the corporate seal now is as a prima facie authentication that the document is the act of the corporation and that the officers who have executed it have been thereunto duly authorized." *Id.*

In *Gildenhorn,* we also isolated the specific issue to be addressed when determining the relevance of a corporate seal affixed to a contract. We stated:

> The mere fact that the corporate seal appears on the instrument other than in the usual place of the private seal would not make the instrument a specialty in the absence of a recital affixing the seal or of extrinsic evidence showing an intention to have it serve the function of a general seal. In other words, it is a question of fact in any specific case as to whether the corporation has employed its corporate seal as a general seal or whether it has adopted any other permissible form of seal as convenient for the [purpose of authentication].

*Id.* (citations omitted).

One year after our decision in *Gildenhorn,* we had the opportunity to apply our reasoning from that case in *Mayor & Council of Federalsburg v. Allied Contractors, Inc.,* 275 Md. 151, 338 A.2d 275 (1975). In *Mayor of Federalsburg,* Allied, a construction contractor, filed suit against a local government seeking compensation due for services provided in a highway improvement project. One issue in the case was whether the relevant agreement was a contract under seal governed by a twelve-year statute of limitations or an ordinary contract subject to the standard three-year limitation period. The only evidence introduced to support Allied's position that the contact was made under seal was that the vice-president of Allied attached the company's corporate seal to the contract. In determining that the evidence offered was insufficient to establish that the contract was made under seal, we noted our inclination to find a simple contract until a party offers enough evidence to the contrary. We explained that:

if a corporate seal is impressed on an agreement it will remain a simple contract unless either the body of the contract itself indicates that the parties intended to establish an agreement under seal, or sufficient extrinsic evidence, in the nature of 'how and when and under what circumstances the corporate seal was affixed,' establishes the parties desire to create a specialty.

*Federalsburg,* 275 Md. at 155–56, 338 A.2d at 279 (citing *General Petroleum Corp. v. Seaboard ·Terminals Corp.,* 23 F.Supp. 137, 139 (D.Md.1938)). *See also Gildenhorn,* 271 Md. at 398, 317 A.2d at 842; *Levin v. Friedman,* 271 Md. 438, 443, 317 A.2d 831, 834 (1974).

 If any presumption should have been recognized in this case, it should have been the opposite of the one fashioned by the Court of Special Appeals, i.e., the Agreement was presumed to be an ordinary contact. This question, however, is not before us. We hold only that, under Maryland law, the directional phrase "Affix Corporate Seal" adjacent to the signature execution lines on the face of an agreement, combined with the attachment of corporate seals, does not create a presumption. *See Molesworth,* 341 Md. at 643–44, 672 A.2d at 619. The presence of the seals and the directional phrase create an equally strong inference that the seals were added to establish the authority of the parties signing the agreement. *See Gildenhorn,* 271 Md. at 398, 317 A.2d at 842. Under the instances of this case, the creation of the presumption was an error of law.

### B. Contracts Under Seal

 We have held that a court may look to at least two features of a contract to determine whether it was executed under seal. *See Federalsburg,* 275 Md. at 155, 338 A.2d at 279 (citing *General Petroleum Corp.,* 23 F.Supp. at 139; *Gildenhorn,* 271 Md. at 398, 317 A.2d at 842. The court may first look to the body of the contract itself. If there is a recital in the body of the agreement stating explicitly that the agreement is one under seal, that is conclusive evidence of an intent to create a sealed instrument. *See Gildenhorn,* 271 Md. at

403, 317 A.2d at 844–45) (citations omitted)(formal recitals such as "signed and sealed" and "witness my hand and seal" make the instrument a sealed one for purpose of statute of limitations). *See also Smith v. Woman's Med. College,* 110 Md. 441, 445–46, 72 A. 1107, 1109 (1909). A court also may look to extrinsic evidence to ascertain the sealed nature of a contract. In circumstances where a corporate seal is affixed to an agreement and the purpose of the attachment is unclear, " 'extrinsic evidence is admissible to show whether the use of the seal was intended to make the paper a specialty or merely as evidence of its authorized execution, or that it was in fact used without authority.' " *Federalsburg,* 275 Md. at 156, 338 A.2d at 279 (quoting *General Petroleum Corp.,* 23 F.Supp. at 140–41).

Turning to the text of the Agreement in the case at hand, we find nothing in the body of the Agreement that establishes that it was made under seal. Maryland Casualty urges us to hold that the directional phase "Affix Corporate Seal" appearing on the face of the Agreement is enough to evidence the parties' intent to create a contract under seal. It seeks to distinguish the present case from *Federalsburg* where we held that "if a corporate seal is impressed on an agreement it will remain a simple contract unless ... *the body of the contract itself* indicates that the parties intended to establish an agreement under seal ...." *Federalsburg,* 275 Md. at 155, 338 A.2d at 279. (emphasis added). Maryland Casualty acknowledges that the directional phrase does not appear in the body of the Agreement, but it contends that *Gildenhorn* and *Conowingo Land Co. v. McGaw,* 124 Md. 643, 93 A. 222 (1915), demonstrate that reference to the corporate seals anywhere on the face of an agreement is an adequate expression of the intent. Maryland Casualty's effort to align this case with *Gildenhorn* and *Conowingo* is unconvincing. In both of those cases, the agreements at issue made specific reference to corporate seals in the bodies of the agreements. The testimonium clause in *Gildenhorn* provided:

IN WITNESS WHEREOF, Columbia Real Estate Title Insurance Company has caused its corporate name *and seal* to be hereunto affixed by its duly authorized officers.

*Gildenhorn,* 271 Md. at 390, 317 A.2d at 838. (emphasis added). Similarly, the testimonium clause of the agreements in *Conowingo* stated:

Witness the signature of the Treasurer, *together with the seal* of said corporation, annexed hereto, duly attested by its Secretary.

*Conowingo,* 124 Md. at 643, 93 A. at 223. (emphasis added). Here, the testimonium clauses of the Agreement and subsequent amendments provide:

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

The absence of the word "seal" from the testimonium clause of the Agreement is a significant fact that distinguishes the present case from the cases relied upon by Maryland Casualty. The directional phrase "Affix Corporate Seal" is not a recital within the body of the Agreement, therefore the phrase is insufficient to elevate the Agreement to the status of a contract under seal under our holding in *Federalsburg. See* 275 Md. at 155, 338 A.2d at 279.

The present case is similar to *The President and Directors of Georgetown College v. Madden,* 505 F.Supp. 557 (D.Md. 1980), *aff'd in part, dismissed in part,* 660 F.2d 91 (4th Cir.1981). In *Georgetown College,* the school brought an action against a construction contractor for defects in a construction project on the school's campus. One issue in the case was whether the construction contract was a sealed agreement. Like the Agreement in dispute here, there was no reference to corporate seals in the body of the contract, and the word "seal" appeared in the signature section of the agreement next to the execution lines. The corporate seals of Georgetown and the construction company were affixed to the contract over the word "seal." Relying on the absence of any reference to the seals in the body of the contract, the court held:

While no case appears to have decided the question of whether, for purposes of determining the applicable limitations period, the use of the word "(Seal)" together with the impression of corporate seals makes a contract a sealed instrument, *in the absence of a clause in the body of the contract regarding the sealed nature of the contract,* it would appear that such combined use of the word "(Seal)" and of such impressions should be considered insufficient by themselves to manifest an intent to render the contract under seal, particularly where such use of the word and of such impressions would serve no purpose other than to extend the statute of limitations. Rather, such use should be viewed as serving only as an authentication of corporate action when the same is deemed desirable. The parties to the contract were sophisticated. They could easily have specifically provided by so stating in the body of the contract that the contract was under seal. They did not do so.

*Georgetown College,* 505 F.Supp. at 587. We are persuaded by the court's reasoning in *Georgetown College.* As in *Georgetown College,* both parties to the present transaction were sophisticated business entities acting with the benefit of counsel. If they intended to execute the Agreement under seal, thereby *extending the statute of limitations an additional nine years,* these parties surely would have selected a more direct articulation than the directional phrase "Affix Corporate Seal" to serve their purpose.

■ There being no evidence in the Agreement of an intent to execute the document under seal, we consider the extrinsic evidence offered by Maryland Casualty to support its interpretation of the Agreement. The absence of evidence establishing that the parties intended to, or even spoke about, creating a document under seal leaves us unconvinced that a contract under seal was effected. As stated previously, this Court will consider an agreement an ordinary contract, unless there is a recital in the body of the agreement or "sufficient extrinsic evidence, in the nature of 'how and when and under what circumstances the corporate seal was affixed,' . . . establishes that the parties desired to create a specialty." *Federalsburg,*

275 Md. at 155, 338 A.2d at 279. (citations omitted). *See Gildenhorn,* 271 Md. at 398, 317 A.2d at 842. Maryland Casualty provided no evidence as to its supposed intent to create a contract under seal. The company put forward one witness, James A. Gordon, Esquire, at the 15 May 1997 evidentiary hearing. Mr. Gordon was a staff attorney with Maryland Casualty with primary responsibility for the negotiation of the Agreement. In response to repeated questions on direct and cross-examination inquiring as to whether the parties intended to create a contact under seal, Mr. Gordon consistently and unequivocally responded that he had no recollection of an intent to create a sealed contract. In fact, Mr. Gordon testified that he could not recall any discussion during the negotiation period addressing the legal effect or significance of the corporate seals or the phase "Affix Corporate Seal" on the Agreement.[6] He did acknowledge, however, his general understanding that corporate seals were customarily used to demonstrate that the execution of a contract was an authorized act of a corporation.

■ Mr. Gordon's testimony supports our conclusion that the Agreement was not a contract under seal. The testimony fails to provide any evidence of an affirmative intention to execute the Agreement under seal. Rather, it suggests that the parties never discussed the issue. "A sealed instrument is not created by accident." *Georgetown College,* 505 F.Supp. at 585. Under the circumstances, the parties to this contract would not likely have created a contract under seal without any discussions to that effect and we will not allow Maryland Casualty unilaterally to create one by implication. The documents introduced by the parties at the evidentiary hearing are equally unhelpful in our search for any evidence of an intention to execute a contract under seal. At the hearing, Maryland Casualty introduced a series of documents for the purpose of showing how the Agreement took shape during the

---

**6.** Its worth noting that Mr. Gordon testified that he could not recall ever preparing or negotiating a contract as an attorney in which the parties intended to create a contract under seal.

negotiation process. By Maryland Casualty's own admission, the documents show that "the question of the signatures and the execution and the corporate seals and the attestations were not a matter . . . of discussion or controversy."

■ As the uncontroverted testimony here is that the question of forming a contract under seal was never discussed by the parties and no reference to corporate seals appears in the body of the Agreement, we hold, as a matter of law, that the Agreement was an ordinary contract. In accordance with the parties' stipulation filed with the Circuit Court on 13 May 1997, Maryland Casualty's breach of contract claim is barred by the three-year limitation period of CJP § 5–101.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO DISMISS MARYLAND CASUALTY COMPANY'S BREACH OF CONTRACT CLAIM; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MARYLAND CASUALTY COMPANY.**